IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DOUGLAS MALLETT,

        Plaintiff,

v.

TRISHA ANDERSON
and KRISTINE DEYOUNG,

        Defendants.

OPINION AND ORDER

19-cv-292-wmc

---

*Pro se* plaintiff Douglas Mallett has been granted leave to proceed on claims that defendants violated his federal constitutional and state-law rights by providing inadequate medical care after he fell and injured his wrist while a prisoner at Columbia Correctional Institution ("Columbia"). Specifically, Mallett claims Nurses Trisha Anderson and Kristine DeYoung consciously disregarded his requests for medical attention and referral to a physician. Defendants subsequently filed a motion for summary judgment on the merits of plaintiff's Eighth Amendment claims and for dismissal of his remaining state law negligence claims for lack of subject matter jurisdiction. (Dkt. #32.) Because a reasonable jury could not find from the evidence of record that defendants Anderson or DeYoung acted with deliberate indifference to Mallett's need for medical attention following his fall, the court must grant defendants' motion for summary judgment as to his Eighth Amendment claims and will relinquish any supplemental jurisdiction over his remaining state-law claims.[1]

---

[1] For this reason, the court need not reach defendants' alternative assertion of qualified immunity.

UNDISPUTED FACTS[2]

A. Background

Plaintiff Mallett's claims arise out of alleged events at Columbia in June and July of 2016. At that time, defendants Anderson and DeYoung were nurse clinicians in Columbia's Health Services Unit ("HSU").

When an inmate at Columbia has a medical concern or wants to be seen by or otherwise communicate with medical staff, he can fill out and submit a health services request ("HSR") form. Nursing staff work to triage all HSRs within 24 hours of receipt. A staff response to an HSR will generally indicate whether: the inmate is scheduled to be seen by a medical provider; the HSR is referred to another staff member; the HSR is referred for copies or a record review; or education materials are attached. The response may also provide additional, written comments.

B. Mallett's Alleged Injury and Treatment

On June 7, 2016, Nurse Anderson received a call from staff reporting that Mallett had been hit in the groin during recreation. Anderson advised staff to inform Mallett that he should submit an HSR if necessary.[3] While playing basketball, Mallett had actually

---

[2] Unless otherwise indicated, the following facts are material and undisputed. Consistent with its practice, the court has drawn these facts from the parties' proposed findings and the evidence of record viewed in a light most favorable to plaintiff. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true."). Mallett also purports to dispute many of defendants' proposed findings of fact with objections, arguments, or unsupported statements of fact, which the court generally overrules, except as they materially relate to Mallett's opposition to defendants' motion as set forth in the opinion section below.

[3] According to Mallett's contemporaneous medical record, he declined to be seen at the time of his injury, but Mallett argues that he *never refused* medical attention at the time of his injury and actually invited it, by filling out an HSR form on June 7. Regardless, the medical records show that form was not received by HSU until June 9. The parties agree that Mallett only submitted an HSR

experienced a potential wrist injury, rather than a groin injury, and promptly submitted an HSR about a possible wrist "fracture."

The next day, June 8, 2016, an officer in Housing Unit 1 also called HSU to report that Mallett believed he had broken his wrist while playing basketball the previous day. Because the call was received after hours, however, a non-defendant, HSU Nurse Kathy Whalen, asked to speak with Mallett over the phone to triage his complaint. The officer then stated he would have Mallett report to the dayroom and call Whalen back, but by 10:30 p.m., Mallett had not called HSU, and there were no further calls from officers on Mallett's behalf that evening. Nurses also looked for an HSR from Mallett that evening but did not find one. The medical record shows that HSU ultimately received Mallett's HSR dated June 7, on the morning of June 9, 2016, and triaged it that same day. Mallett was then scheduled to be seen by a nurse.

Mallett saw Anderson for the pain he was experiencing in his left wrist the very next day, June 10, 2016. While Anderson noted that Mallett's wrist showed minimal swelling and a full range of motion, she also noted that he resisted her range of motion testing. Still, Anderson did not hear any crepitus, or joint cracking and popping;[4] nor did she find any bruises or deformation on Mallett's wrist.

Still, during the June 10 consultation, Mallett admits he expressed frustration over not having been seen sooner. While Anderson responded that he was seen as soon as his HSR was received, Mallett was unhappy with Anderson's response, and he then ended the

---

after his original fall and claimed injury. (*See* Speckhart Decl., Ex. 1004 – Medical Record (dkt. #35-1, at 11).)

[4] *See* Crepitus, https://en.wikipedia.org/wiki/Crepitus (last visited Nov. 22, 2023); *see also* Word: CREPITUS (Feb. 17, 2020), https://www.cedars-sinai.org/discoveries/crepitus.html.

appointment abruptly. He also declined the pressure, rest, ice compression, and elevation ("PRICE") treatment that Anderson offered him at the time. As Mallett left the appointment, Anderson advised him to submit an HSR if his pain did not improve. While Anderson could not complete Mallett's evaluation, she indicated in her clinic notes that neither a follow-up nor a referral was necessary for his likely strain or sprain.

On or about June 19, 2016, Mallett submitted a second HSR, which both followed up on his June 10, 2016, appointment with Anderson and complained that his wrist and hand were still in extreme pain. (Speckhart Decl., Ex. 1004 – Medical Record (dkt. #35-1, at 12).) Mallett also wrote that he still lacked "full function" in his hand or wrist. Mallett's second HSR was received on June 21, 2016. Nurse DeYoung responded that same day and scheduled Mallett to be seen by a nurse.

As promised, Mallett saw Nurse Whalen at HSU for his left wrist injury the very next day, June 22, 2016. At that appointment, he complained that his wrist had a bump and would not bend. Mallett also told Whalen that he needed an X-ray. However, during the appointment, Mallett again admits to being argumentative, angry, and upset about the care he received for his wrist injury during his initial consultation with Anderson and still resistant to Whalen's efforts to passively move his wrist. Upon examination of Mallett's left wrist, Whalen also noted no deformities, a strong lateral radial pulse, intact circulation to his fingers, and a non-tender palpation aside from the base of his thumb and wrist. Still, Mallett insisted on seeing a doctor and getting an X-ray, prompting Whalen to refer him to be seen by a doctor within seven days and to advise Mallett to submit another HSR should he experience no improvement with his wrist pain. Mallett did not submit any additional HSRs in connection with his wrist pain before he was seen by a physician.

On June 28, 2016, Mallett saw a non-defendant, Dr. Salam Syed, in connection with his left wrist pain and difficulty of wrist movement. At that time, Dr. Syed observed only mild swelling, noted that Mallett was now willing to be treated, and advised Mallett to take Tylenol twice a day for 30 days. Dr. Syed also ordered an X-ray of Mallett's left wrist, which was reviewed by a radiologist on June 30, 2016, and did not show any signs of acute fracture or dislocation.[5]

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then to survive summary judgment, the non-moving party must provide evidence "on which the jury could reasonably find" otherwise. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Here, defendants seek summary judgment on the merits of plaintiff's Eighth Amendment claims and dismissal of his state law negligence claims for lack of subject matter jurisdiction, which the court addresses in turn below.

---

[5] In fairness, Mallett points to a later July 27, 2016, entry in his medical records, where Dr. Syed identifies "broken bone chips" in his wrist X-ray. According to Mallett, Dr. Syed's finding was "consistent with a form of fracture." (Pl.'s Opp. to Proposed Findings of Fact (dkt. #39, at 5) (citing Speckhart Decl., Ex. 1004 – Medical Record (dkt. #35-1, at 3)).) However, Mallett does not identify any evidence suggesting that defendants Anderson or DeYoung ever saw this X-ray or were aware of any bone chips in his wrist at the time they provided him with treatment in June 2016.

5

I. **Plaintiff's Eighth Amendment Claims**

The Eighth Amendment gives prisoners the right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

First, a medical need is "serious" if it: so obviously requires treatment that even a lay person could recognize the need for medical attention; carries risk of permanent serious impairment if left untreated; results in needless pain and suffering; *or* significantly affects an individual's daily activities. *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). Defendants do not dispute that Mallett's reported wrist injury constituted an objectively serious medical condition. Second, "deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it, which is a decidedly high standard by itself. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, acts of deliberate indifference require *more than* negligence, or even gross negligence, but require something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

Because these defendants are medical professionals, the relevant question under the Eighth Amendment is whether their actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Thus, defendants argue that plaintiff

6

cannot prove they were deliberately indifferent to his requests for medical care. In particular, defendant Anderson contends that: (1) she could not be found deliberately indifferent by a reasonable jury because plaintiff declined the medical care that he was offered; and (2) regardless, a reasonable jury would have to agree that Mallett's presentation on June 10, 2016, did not necessitate his referral to a physician. Defendant DeYoung contends that she could not be found deliberately indifferent by a reasonable jury because she did not ignore Mallett's request for medical care.

A. Nurse Anderson

Defendant Anderson only interacted with plaintiff on two occasions in connection with his wrist injury: on June 7, 2016, when she was contacted by staff after plaintiff injured himself while playing basketball; and on June 10, 2016, when she saw plaintiff during a nursing visit. The undisputed evidence shows that defendant Anderson responded promptly to the call she received from staff on the 7th, and based on misinformation about Mallett suffering a groin injury provided by staff at that time about the nature of the injury, asked that plaintiff be informed he should submit an HSR, if needed. Further, when Anderson examined plaintiff three days later, her evaluation was limited by plaintiff's uncooperative behavior, and based on her observation of minimal wrist swelling and a full range of motion, she concluded that plaintiff's wrist injury suggested a sprain or strain, rather than an emergent or urgent condition. Anderson also offered PRICE treatment and advised plaintiff to submit an additional HSR if his pain continued.

In response, plaintiff has submitted *no* evidence to support a reasonable jury finding based on the information she had at the time, that Anderson failed to use her medical

7

judgment in evaluating and making treatment decisions for his left wrist on either June 7 or June 10, 2016. To begin, plaintiff contends that "[e]ven a three day delay in medical care [for] a serious medical injury such as a broken finger is deliberate indifference." (Pl.'s Opp. to Proposed Findings of Fact (dkt. #39, at 4).) That may be the case where, for example, an inmate suffers an open bone dislocation that punctures the skin and his healthcare provider defers proper treatment to attend a New Year's party. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). But plaintiff did not have any broken bones, and Anderson did not misdiagnose plaintiff; nor does plaintiff point to any evidence in the record from which a reasonable jury could find that Anderson consciously disregarded his reported pain here. Indeed, the undisputed evidence shows that Anderson promptly responded to plaintiff's concerns based on the information she had, evaluating him as best she could, offering treatment, and suggesting that he keep the HSU informed of his progress. Moreover, while plaintiff followed Anderson's initial direction to file his June 7 HSR, he then declined the PRICE treatment that defendant Anderson offered him on June 10.

Plaintiff also contends that defendant Anderson's failure to refer him to a doctor on either occasion led to him to experience pain for 15 days before his June 22, 2016, consultation with Nurse Whalen. It is true that a prison official's "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d at 753 (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). As noted, however, Anderson did not even know that plaintiff had injured his wrist on June 7, and even when she did know about his actual complaint on June 10, Anderson was not able to evaluate

8

plaintiff fully, and he rejected pain intervention treatment that she offered based on her conclusion that he had suffered a simple sprain. Plaintiff certainly does not present any evidence that Anderson should have referred him to a doctor for a groin injury on June 7, nor that Anderson's finding of a simple sprain on June 10 was obviously wrong. Nor does he offer proof that her proposed pain treatment was inappropriate and required a doctor's intervention. Moreover, a delay in treatment only constitutes deliberate indifference where a plaintiff presents independent evidence that the delay had such an effect. *Petties v. Carter*, 836 F.3d 722, 730-731 (7th Cir. 2016). Medical professionals are "entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Plaintiff has presented no evidence to support his claim that any delay caused by defendant Anderson's failure to refer him to a physician worsened his condition or that she left him to suffer in pain.

Instead, plaintiff argues that "it is not a must do for a plaintiff to keep putting in non-stop HSR forms" to receive medical care. (Pl.'s Opp. To Proposed Findings of Fact (dkt. #39, at 4).) The court acknowledges plaintiff's frustration with the process for seeking medical care in custody. However, what matters for purposes of this lawsuit is that Anderson provided plaintiff with the medical care she deemed necessary based on the information she had on both June 7 and June 10, 2016. Plaintiff is not entitled to demand specific care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). For all of these reasons, defendant Anderson is entitled to summary judgment on plaintiff's Eighth Amendment claim.

9

### B. Nurse DeYoung

The only involvement that defendant DeYoung had with plaintiff's treatment was triaging his second HSR on June 21, 2016, and scheduling him for a nurse visit the next day. Plaintiff has not submitted any evidence showing that his condition had become more urgent between June 10 and June 21. Instead, plaintiff contends that DeYoung should have given him pain medication. In support, plaintiff points to DeYoung's declaration, which describes her general role as a nurse clinician at Columbia, including "management of medications," rather than any specific responsibilities she had towards plaintiff while triaging his second HSR on June 21, 2016. (DeYoung Decl. (dkt. #36) ¶ 3.) However, there is no dispute that DeYoung's role in treating plaintiff's injury was limited to triaging his HSR, which she did timely. She never interacted with plaintiff directly, nor is there any evidence that she had the authority to prescribe him pain medication as the triage nurse without seeing him. Thus, no reasonable jury could find that defendant DeYoung was deliberately indifferent to plaintiff's left wrist injury and pain when she scheduled him for an appointment with a nurse within a day, and the court must also grant defendant DeYoung's motion for summary judgment on plaintiff's Eighth Amendment claim.

## II. Exercise of Supplemental Jurisdiction over Plaintiff's State-Law Claims

That leaves plaintiff's state-law negligence claims against defendants arising from the same set of facts. While the court may exercise supplemental jurisdiction over these claims, 28 U.S.C. § 1367(a), the court will decline to do so here because plaintiff's related federal claims against these defendants are being dismissed before trial, and the court has not considered the merits of plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3). In

deciding whether to exercise supplemental jurisdiction, a federal court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Exercising jurisdiction over plaintiff's state-law claims does not serve judicial efficiency, nor has either party asked the court to retain jurisdiction over them if the federal claims are dismissed. Accordingly, plaintiff's state-law claims will be dismissed without prejudice to him pursuing them in state court, subject to any applicable statute of limitations.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #32) is GRANTED and judgment shall be entered on plaintiff's Eighth Amendment claims against defendants Anderson and DeYoung with prejudice.

2. The court relinquishes jurisdiction over plaintiff's state-law claims against defendants Anderson and DeYoung, which are DISMISSED without prejudice.

3. The clerk of court is directed to enter final judgment.

Entered this 22nd day of November, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge